COLIAN SHEPARD, RESPONDENT, v. CENTURY ELECTRIC COMPANY, A CORPORATION, APPELLANT.*

St. Louis Court of Appeals. Opinion filed July 5, 1927.

1.—Master and Servant—Negligence—Servant Injured—Unguarded Machinery—Evidence—Jury Case. In an action to recover damages for personal injuries by an employee of defendant sustained while working at a machine known as a cutter or trimmer in which the employer's negligence was alleged as failure to guard the machine, failure to provide employee with suitable appliances, negligently ordering employee to remove field shells from the end of a revolving shaft with his fingers, and the failure to warn employee of danger, evidence reviewed and held sufficient to take the case to the jury.

2.—Instructions—Assuming Facts—Erroneous. In an action to recover damages for personal injuries by an employee sustained while working at a machine known as a cutter or trimmer, an instruction which assumed that pieces of scrap metal were likely to remain on the shells after they were trimmed in the machine at which plaintiff worked, and that it was not reasonably safe for plaintiff to remove shells from the machine with his fingers, held error as treating such facts as settled and established and not leaving the jury free to find whether or not such facts existed.

3.—Same—Master and Servant—Unguarded Machinery—Statute—Instruction Directing Verdict for Servant on Finding Machine Could be Safely Guarded—Error. In an action by an employee for personal injuries sustained while working at a machine known as a cutter or trimmer, his finger having been caught in the machine and injured, an instruction directing a verdict for the plaintiff on finding that the machine was dangerous to plaintiff when he was engaged in his ordinary duties and that defendant could safely guard the machine without interfering with its practical operation and that as a direct result of such failure, plaintiff was injured, held erroneous in view of section 6786, Revised Statutes 1919, as imposing upon the defendant the duty as a matter of law so to change the structure of its machine, or attach thereto such device as to relieve the plaintiff from the performance of his service at the machine if it was possible to do so without interfering with the practical operation of the machine.

4.—Master and Servant—Negligence—Servant Injured—Unguarded Machinery—Statute—Application. To guard a machine as contemplated by section 6786, Revised Statutes 1919, a duty imposed upon an employer, is to place some device in the nature of a shield or defense between the employee and danger, so as to protect him from injury while in the performance of some service required of him, but the statute does not require the making of such a change in the structure of a machine or the attaching of such a device thereto as will relieve the employee from the performance of the service required of him.

_____

*Corpus Juris-Cyc. References: Master and Servant, 39CJ, p. 412, n. 90; p. 1134, n. 42; p. 1151, n. 72; p. 1167, n. 72; p. 1168, n. 78; p. 1222, n. 87; p. 1234, n. 79; Trial, 38Cyc, p. 1543, n. 69.

Appeal from the Circuit Court of the City of St. Louis.—Hon. Robert W. Hall, Judge.

REVERSED AND REMANDED.

*Holland, Rutledge & Lashly* and *Watts & Gentry* for appellant.

(1)   The court erred in overruling the demurrer to the evidence at the close of the entire case.   The demurrer should have been sustained because there was a total failure of proof of each one of the grounds of negligence alleged in plaintiff's petition on pages 5 and 6, which were all the grounds alleged.   (a)   There was no evidence to support the allegation of failure to guard, for plaintiff's evidence tended to show that it was not possible to guard the machine as now constructed, but that its structure could be changed and a knockout could be put in, and then a guard would not be needed.   Such evidence did not tend to support the allegation of negligence in violating the guarding statute.   Phillips v. A. C. & F., 274 S. W. 963; Stid v. Railroad, 236 Mo. 382, 399; Courter v. Merc. Co., 266 S. W. 340.   (b)   The allegation of negligently failing to furnish a stick or other appliance with which to knock the finished shells from the machine was based entirely on the theory that defendant had actual or constructive notice that scraps of metal were likely to remain attached to a field shell that was trimmed, and to catch the fingers of the operator.   There was no evidence to sustain that allegation.   See authorities, 1, (a).   (c)   The allegation of negligently ordering the plaintiff to use his fingers to remove the shells was based upon the same theory, and the evidence did not tend to support it.   See authorities, 1 (a).   (d)   The allegation of negligently failing to warn the plaintiff of the danger of using his fingers to remove shells was based upon the same idea of actual or constructive notice of the likelihood of scraps of metal clinging to the shells that had been trimmed, and that allegation also failed because of lack of evidence to support it.   (2)   (a)   The court erred in giving instruction No. 1 at the request of the plaintiff.   There are two errors in this instruction.   First, it permitted the jury to find that the defendant knew or by the exercise of ordinary care could have known that pieces of scrap metal were likely to remain upon some of the field shells after they had been trimmed and that it was not reasonably safe for that reason for plaintiff to use his fingers to remove the shells and that defendant with that knowledge negligently ordered the plaintiff to use his fingers for that purpose and thereby caused his injury.   There was no evidence on which to base that portion of the instruction permitting the jury to find actual or constructive knowledge on defendant's part of such danger, and, therefore, the instruction was erroneous.   Boles v. Dunham, 208 S. W. 480; State ex rel. v. Ellison, 270 Mo. 645, 195 S. W. 722; Kuhlong v. W. L. & T. Co., 271 S. W. 788 (Mo. Sup.).   Second.   This instruction wholly failed to submit

to the jury as a question of fact whether or not pieces of scrap metal were likely to remain upon some of said field shells after they had been trimmed and whether it was not reasonably safe for plaintiff to use his fingers to remove said field shells from the revolving shaft on that account, but assumed the existence of those facts and merely required the jury to find that the defendant had knowledge thereof or would have had such knowledge by the exercise of ordinary care and with such knowledge negligently ordered the plaintiff to use his fingers to remove the shells. Therefore, this instruction violated the rule that facts material to plaintiff's case must not be assumed as true in an instruction given at plaintiff's request. It undoubtedly assumed the fact that scraps of metal were likely to remain attached to the shells when cut and that plaintiff was likely to be injured thereby, although such facts were not admitted, and even though there was no evidence tending to prove them. Such an assumption of facts in such instructions has been expressly condemned in the following cases: Rey v. Plumb, Inc., 287 S. W. 783, 785; Boland v. Ry. Co., 284 S. W. 141, 144; Reel v. Inv. Co., 236 S. W. 43, 47; Roman v. King, 233 S. W. 161; Ganey v. K. C., 259 Mo. 654, 663-4. (b) The court erred in giving instruction No. 2 at the request of the plaintiff. There was no evidence on which to base that portion of the instruction which permitted the jury to find that it was possible for the defendant to safely and securely guard the machine without interfering with the practical operation thereof, the evidence offered by plaintiff tending to show that it was not possible to apply such a guard without interfering with the practical operation of the machine, but that the structure of the machine could be so changed that a guard would not be necessary, which evidence was wholly insufficient to support a finding by the jury that the machine could be safely and securely guarded. See authorities, 2 (a), (1).

*Jesse T. Friday* for respondent.

(1) A general demurrer to the evidence was properly overruled where the petition alleges several assignments of negligence, and there was evidence tending to prove some of them. Morris v. Wagner Elec. Mfg. Co., 243 S. W. 424; Torrance v. Prior, 210 S. W. 430; Shapiro v. Am. Surety Co. of N. Y., 259 S. W. 502; Leahy v. Winkle, 251 S. W. 482. (2) In passing on a demurrer to the evidence, the respondent is entitled to the benefit of every reasonable inference that a fair-minded jury of ordinary intelligence might legitimately draw from the evidence. Burton v. Holman, 231 S. W. 630; Burtch v. Wabash Ry. Co., 236 S. W. 338; Keppler v. Wells, 238 S. W. 425; Anderson v. White, 235 S. W. 834; W. J. Howey Co. v. Cole, 269 S. W. 955; Karages v. Union Pac. Ry. Co., 232 S. W. 1100; Moffatt v.

Link, 229 S. W. 836. (3) The guarding statute is highly remedial and must be liberally construed so as to effectuate the true intent and meaning thereof. Austin v. Bluff City Shoe Co., 158 S. W. 709; Cole v. North Am. Lead Co., 240 Mo. 247. (4) Under the statute, no particular method of guarding is prescribed. The question is whether the machine could be guarded without interfering with the practical operation thereof. To "guard" a machine is to provide it with a "guard;" that is, any device, fixture or attachment designed to protect or secure against injury from it. Simon v. St. Louis Brass Mfg. Co., 298 Mo. 70, 250 S. W. 74; Stovall v. Burkhart, 261 S. W. 936; Bressler v. Laughlin, 168 Ind. 38, 79 N. E. 1033. (5) In action against master for injury by machinery not guarded in accordance with statute requiring guarding of machinery, it is no defense to show that other manufacturers engaged in the same line of business did not guard their machines, for mere wrongful custom will not excuse the defendant. Austin v. Bluff City Shoe Co., 158 S. W. 709. (6) Instruction which requires the jury to find "that defendant knew, or by the exercise of ordinary care could have known, that certain facts existed" does not assume those facts to exist, but, in effect, requires the jury to find that such facts do exist. McMillan v. Bausch, 234 S. W. 835; Montgomery v. Hammond Packing Co., 217 S. W. 867; Davidson v. St. Louis Transit Co., 109 S. W. 583; Brady v. Railroad Co., 206 Mo. 509, 102 S. W. 978; Geary v. Railroad, 138 Mo. 251; Van Leer v. Wells, 263 S. W. 493; Evans v. General Explosives Co., 239 S. W. 487, 293 Mo. 364; Steigleder v. Lonsdale, 253 S. W. 487; Henderson v. Heman Constr. Co., 199 S. W. 1045.

SUTTON, C.—This is an action to recover damages for personal injuries received by the plaintiff while in the employ of defendant at its manufacturing plant in the city of St. Louis. The cause was tried before the court, and a jury, resulting in a verdict and judgment in favor of plaintiff for $1500, from which judgment the defendant appeals.

Plaintiff sustained the injuries for which he sues while working at a machine known as a cutter or trimmer. The machine consisted of two solid iron shafts, one above the other, and rested on a pedestal to which it was bolted. It was provided with a foot treadle and hand lever. The operator stood in front of the machine. The machine was used for cutting or trimming metal cups, called field shells. The upper shaft was provided with a circular cutter. The left end of the lower shaft was provided with an arbor, upon which the cups or field shells to be cut or trimmed were placed. The operator, after placing a shell on the arbor, pressed down on the foot treadle or hand lever and thus brought the upper shaft down to a point where the circular cutter would come in contact with

the shell. The machine was operated by electrical power. The shafts revolved continuously. The shells were placed on the arbor and removed therefrom by the operator with his left hand. At the time plaintiff was injured he was attempting to remove a shell from the arbor after the shell was trimmed. There remained attached to the shell after it was trimmed a piece of scrap metal which the cutter had failed to cut entirely from the shell. In so attempting to remove the shell, plaintiff's index finger was caught by the piece of scrap metal so remaining attached to the shell, and was thereby drawn between the revolving shafts, and injured.

The petition assigns negligence on the part of defendant in the following respects: (1) In negligently failing to safely and securely guard the machine; (2) in negligently failing to provide plaintiff with a suitable appliance with which to knock, push, or take the field shells from the arbor; (3) in negligently ordering plaintiff to remove the field shells from the end of the revolving shaft with his fingers; and (4) in negligently failing to warn the plaintiff of the danger of using his fingers to remove the field shells from the revolving shaft.

The answer is a general denial, coupled with pleas of assumption of the risk and contributory negligence.

Plaintiff testified that on or about the 6th day of November, 1923, he was in the employ of the defendant operating a certain machine known as a punch press, and that on said day the defendant ordered and directed plaintiff to operate the machine known as a cutter, or trimmer, for the purpose of trimming the edges of certain metal cups, known as field shells; that he had not previously operated this machine; that his foreman, or set-up man, from whom he received his orders, directed him to operate this machine, and also showed him how to cut or trim these field shells and how to take them off of the machine; that the foreman took these field shells off of the machine after they had been cut, with the index finger and thumb of his left hand, while the shafts and the field shells on the arbor of the lower shaft revolved; that in obedience to the orders and directions so given him, plaintiff proceeded to operate said machine; that during the time that he operated the same there were three or four of the shells from which the scrap metal had not been entirely cut off, leaving a piece of scrap metal attached to the shell; that at the time of receiving his injury the cutter of said machine failed to cut off all of the scrap metal, so that about three inches of the scrap metal still remained attached to the shell, there being about a quarter of an inch that had been uncut at the place, where said scrap metal joined the shell; that while said machine was in operation, and while plaintiff attempted to remove the shell from the lower shaft, with the index finger and thumb of his left

hand, as he had been ordered and instructed to do, the piece of
scrap metal so remaining attached to the shell caught the index
finger of his left hand, and caused it to be drawn between the two
revolving shafts, which were about one-quarter of an inch apart,
and thereby caused the finger to be severely injured; that the cir-
cular knife or cutter was about two and one-half or three inches
in diameter; that the shell was about three and one-half or four
inches deep and about three and one-half or four inches in diameter;
that the shell was placed over the arbor on the end of the lower
shaft; that the thickness of the metal of the shell was about one-
sixteenth of an inch; that plaintiff was not given any appliance
with which to knock or remove the shell from the arbor after it
had been cut; that there were no guards upon the machine, except
a piece of metal resembling the sole of a shoe, which was placed
above and in front of the circular knife, or cutter, on the upper
shaft, for the purpose of keeping oil from splashing in the face of
the operator.

G. A. Ross, an expert master mechanic, testified that he examined
the machine in question, and that there was no guard on it to
prevent injury or accident to the operator, such as plaintiff sus-
tained, and that it was possible to safely and securely guard the
machine so as to prevent injury to the operator in taking off the
shells without interfering with the practical operation of the ma-
chine; that the way to guard said machine would be to supply a
knockout, that is, the lower shaft could be made hollow and a bolt,
known as a knockout bolt, could be inserted therein, so that it would
automatically knock the shell from the arbor on the end of the lower
shaft, when the shell had been cut; that in order to equip the ma-
chine with a knockout device, it would be necessary to take the
machine to pieces but that their construction would not amount to
much.

On the part of the defendant, the evidence tended to show that
there was a protection in the nature of a guard to keep any one
from coming in contact with the belt on the machine, and that
other parts were so concealed in the machine that there was no
danger of any one coming in contact with them; that it was a Bliss
machine and was exactly in the condition in which that type of
machine is advertised in the catalogues and used in tin shops and
places where they manufactured articles of sheet metal, and was in
general use for that purpose; that a further guard of any kind
would interfere with the practical operation of the machine, and
that there was no necessity for it; that the operator could take the
shell off by simply holding his hand underneath the shell; that it
fits very loosely on the lower shaft so that it would drop right off
just as soon as the hand is put there; that the machine would cut

different sized shells; that if the shells cut on the machine varied in length, it would not be practical to have a knockout, for then a separate knockout would have to be arranged for each particular shell, and the adjustment of the entire machine would have to be changed; that to equip the machine with a knockout, it would be necessary to remove the lower shaft and put another in its stead, the lower shaft on the machine being too small to be hollowed out; that the sole purpose of the machine is simply to take the place of the tinner's shears.

Defendant assigns error here (1) upon the refusal of its demurrer to the evidence, (2) upon the giving of plaintiff's instruction No. 1, and (3) upon the giving of plaintiff's instruction No. 2.

The evidence, viewed in the light most favorable to plaintiff, and allowing every inference which a fair-minded jury of ordinary intelligence might legitimately draw therefrom, was sufficient to take the case to the jury. [Burtch v. Wabash Ry. Co. (Mo.), 236 S. W. 338; Burton v. Holman, 288 Mo. 70, 231 S. W. 630; Keppler v. Wells (Mo.), 238 S. W. 425; Anderson v. White (Mo. App.), 235 S. W. 834; W. J. Howey Co. v. Cole (Mo. App.), 269 S. W. 955; Karagas v. Union Pacific R. Co. (Mo. App.), 232 S. W. 1100; Moffatt v. Link (Mo. App.), 229 S. W. 836.]

Plaintiff's instruction No. 1 directs a verdict for plaintiff if the jury find that defendant ordered and directed plaintiff to use his fingers to remove the field shells mentioned in the evidence from the lower shaft or roll of the machine while the shafts or rolls revolved, after the shells had been trimmed or cut, that in obedience to such order and direction plaintiff attempted to remove the field shell from the shaft or roll of the machine, that while so engaged plaintiff's finger was caught by a piece of scrap metal remaining attached to the field shell, that plaintiff's finger was thereby drawn between the revolving shafts or rolls and injured, that before defendant gave plaintiff said order and direction the defendant knew or by the exercise of ordinary care could have known that pieces of scrap metal were likely to remain upon some of the field shells, after they had been trimmed or cut, and that the defendant knew or by the exercise of ordinary care could have known that it was not reasonably safe for plaintiff to use his fingers to remove the field shells from the revolving shaft or roll, and that in so doing his fingers were likely to be caught by such piece of scrap metal and drawn between said revolving shafts or rolls and injured.

The defendant urges in support of this assignment that the instruction assumes that pieces of scrap metal were likely to remain on the shells after they were trimmed, and that it was not reasonably safe for plaintiff to remove the shells with his fingers. It has always been held error to assume in an instruction facts in issue.

The instruction here unquestionably assumes such facts.   An instruction almost identical with this instruction was held erroneous by this court in Gebhardt v. American Car & Foundry Co., decided at the present term. So, too, a similar instruction was held erroneous by this court in Rey v. Fayette R. Plumb, Inc. (Mo. App.), 287 S. W. 783.   Plaintiff urges in argument that the instruction does not assume that the pieces of scrap metal were likely to remain attached to the shells after they had been trimmed, and that it was not reasonably safe for plaintiff to remove the shells with his fingers, since the jury could not have found defendant knew such facts unless they found the facts to exist.   This is beside the question.   The vice of the instruction is that it treats these facts as settled and established, and does not leave the jury free to find whether or not these facts existed.   In effect it tells the jury that these facts do exist, and that the jury are concerned only with the question as to whether or not the defendant had knowledge, actual or constructive, of the existence of these facts.   In other words, the instruction assumes the existence of these facts.

Plaintiff's instruction No. 2 directs a verdict for plaintiff upon a finding by the jury that the machine at which plaintiff was working was dangerous to plaintiff while he was engaged in his ordinary duties, that it was possible for defendant to safely and securely guard the machine without interfering with the practical operation thereof, that defendant failed to safely and securely guard the machine, and that as a direct result of such failure plaintiff was injured.

Defendant bases its assignment of error upon the giving of this instruction, on the ground that the evidence is wholly insufficient to support a finding by the jury that the machine could have been safely and securely guarded, within the meaning of the statute. The statute (Sec. 6786, R. S. 1919) provides as follows:

"The belting, shafting, machines, machinery, gearing and drums in all manufacturing, mechanical and other establishments in this State, when so placed as to be dangerous to persons employed therein or thereabout while engaged in their ordinary duties, shall be safely and securely guarded when possible; if not possible, then notice of its danger shall be conspicuously posted in such establishments."

In support of his contention that the machine could have been safely and securely guarded within the meaning of the statute, plaintiff relies on the testimony of his expert witness to the effect that a knockout bolt could have been placed in the lower shaft which would have automatically knocked the shells from the arbor, so as to relieve plaintiff of the necessity of removing the shells with his fingers. We can see in this device no semblance of a guard.   To

guard a machine as contemplated by the statute is to place some device in the nature of a shield or defense between the employee and danger, so as to protect him from injury while in the performance of some service required of him. It is not to make such a change in the structure of the machine, or to attach such a device thereto, as will relieve the employee from the performance of the service required of him. [Bessler v. Laughlin, 168 Ind. 38; McIntosh v. Saw Mill Phoenix, 49 Wash. 152.] In this case the plaintiff was required, in the performance of his duty, to place the field shells on the shaft and remove them therefrom with his fingers. Any contrivance which would have protected or shielded him from injury in the performance of that service would constitute a guard within the contemplation of the statute, but a change in the structure of the machine, or the attaching thereto of a device, so as to relieve the plaintiff from the performance of that service, is not in any sense a guarding of the machine. The instruction complained of imposes upon the defendant the duty as a matter of law to so change the structure of its machine, or attach thereto such device, as to relieve plaintiff from the performance of the service of removing the shells from the arbor with his fingers, if it was possible to do so without interfering with the practical operation of the machine. Such an interpretation of the statute would make it the duty of the manufacturer in all cases to so construct and equip its machines and machinery as to insure the safety of its employees when possible to do so without interfering with the practical operation thereof, or, in other words, to use only the safest machines and machinery that it is possible for human skill to devise. If the statute were intended to be so read, manifestly it would have been so written.

Plaintiff relies on Simon v. St. Louis Brass Mfg. Co. (Mo.), 250 S. W. 74, and Stovall v. F. Burkart Mfg. Co. (Mo. App.), 261 S. W. 936, in support of his view.

In the Simon case the operator of a stamping machine was required to place material on the lower die of the machine with his hand underneath the upper die, which descended and ascended automatically while the machine was in operation, and it was held that a device to warn the operator that the upper die was descending and to push his hand from underneath the die if he did not remove it himself in time to avoid contact, was a guard within the meaning of the statute. It will be observed that the device in that case did not relieve the operator from performing the service of placing the material between the dies with his hand, but merely shielded and protected him in the performance of that service.

In the Stovall case, while plaintiff was in the performance of his duties, a belt slipped from an unguarded pulley which caused another belt to slip from a larger pulley, and plaintiff was thereby

drawn into the machinery and injured.  There was only one flange on the small pulley, which was on the inside, and for that reason the belt slipped off the pulley.  It was shown that it was entirely practical to put a flange on the outside of the pulley, and that if that had been done the belt would have been prevented from slipping off of the pulley.  It was held that such flange was a guard within the meaning of the statute.

It is obvious that these cases afford no support for plaintiff's view.

The Commissioner recommends that the judgment of the circuit court be reversed and the cause remanded.

PER CURIAM :—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court.  The judgment of the circuit court is accordingly reversed and the cause remanded.  *Daues, P. J.*, and *Becker* and *Nipper, JJ.*, concur.