JOHANNA TAYLOR v. KANSAS CITY, Appellant.—112 S. W. (2d) 562.

Division One, January 25, 1938.

110

*George Kingsley, James R. Sullivan* and *Arthur R. Wolfe* for appellant.

*John R. James* and *Sloane Turgeon* for respondent.

FERGUSON, C.—Plaintiff was injured by a fall on a sidewalk in Kansas City. Alleging that the fall was caused by a defect in the sidewalk she brought this action against the city for damages. On a trial in the Circuit Court of Jackson County plaintiff had a verdict and judgment in the amount of $12,000, and defendant appealed.

We necessarily first consider appellant's assignment that the trial court erred in refusing to give its requested instruction in the nature

of a demurrer to the evidence at the close of all the evidence in the case, which requires a summation and review of the evidence in the light most favorable to plaintiff.

The fall occurred as plaintiff was walking north on the public sidewalk along the east side of Troost Avenue and in front of 3525 Troost. This is a business section and the buildings abutting the sidewalk along the east side of Troost are occupied by stores and for other commercial purposes. This public sidewalk is constructed of concrete and is eleven feet in width with a slope for drainage from the building line to the curb of one-fourth of an inch to one foot. A manhole was located in the sidewalk about opposite 3525 Troost. The east edge of the perforated cast iron cover of the manhole, which was 2 feet in diameter, was thirty-three and one-half inches from and west of the building line. The cover was level, that is it did not slope to conform with the slope of the sidewalk. The west side or edge of the manhole cover was level or even with the surface of the sidewalk so that in the normal slope of the sidewalk from the building line to the east edge of the level cover an offset would result, that is, the manhole cover would be lower than the surface of the sidewalk adjoining it on the east. In constructing the sidewalk and purportedly as a method of adjusting this situation that portion of the sidewalk adjoining the east side or edge of the level manhole cover was so constructed as to form a semicircular sloping "shoulder" about that side of the manhole cover. Plaintiff's evidence was that this shoulder made a slope of eight inches from the normal surface of the sidewalk east of the manhole to the east edge or side of the manhole cover and that the east edge of the manhole cover was one and one-half inches below the normal surface of the sidewalk at the point where the slope commenced, that is, that there was a slope in the sidewalk from the normal surface to the east edge of the manhole cover of one and one-half inches in eight inches. A blue print showing measurements and levels and a number of photographs of the sidewalk and manhole cover were introduced in evidence and the originals have, by agreement, been filed in this court. It is difficult to here describe the condition complained of which was depicted by the blue print and the photographs before the trial court and the jury.

Plaintiff, a widow, and her daughter had come to Kansas City from Salt Lake City, Utah, three days prior to the date of this accident. The daughter had accepted employment in Kansas City and they were living at a nearby apartment house. On this morning about eleven o'clock, plaintiff was on her way to take a street car at the Armour Boulevard stop on Troost Avenue. Plaintiff testified that it was a warm day and as there was some shade on the east side of the sidewalk near the buildings she was walking on that side of the

sidewalk; that she stepped on the edge or side of this slope at the east side of the manhole, and, "my heel slipped down that slanting or curving incline" and "it made me lose my balance and I fell." A witness who, from a distance of about ten feet, saw plaintiff fall, said that plaintiff stepped on the "slanting" side of the manhole shoulder and "her foot turned and threw her on her right side."

Referring briefly to the pleadings. The negligence alleged is, in substance, "a defective," "negligent" and "unsafe" condition of the sidewalk, in that the manhole cover was below the normal surface of the sidewalk "with the sidewalk sloping abruptly" down to it. The answer was a general denial with a plea of contributory negligence.

Apparently the sidewalk and the manhole were originally constructed in the manner in which they existed on the date of the accident, which we have attempted to above describe, and no point is made here that the condition had not existed for a sufficient time to constitute notice to the city. Nor does appellant claim that the evidence shows plaintiff guilty of contributory negligence as a matter of law.

The sole ground upon which appellant rests its contention that it was entitled to a directed verdict by the trial court is, that "the defect complained of, and as shown by the evidence, was of such a trivial nature that, as a matter of law, it was not actionable." The full measure of the duty of a municipality in reference to the maintenance of public streets and sidewalks is that it exercises reasonable and ordinary care to keep them in a reasonably safe condition for travel thereon by those who use them in the exercise of ordinary care. [Hebenheimer v. City of St. Louis, 269 Mo. 92, 101, 189 S. W. 1180, 1182; Young v. The City of Webb City, 150 Mo. 333, 51 S. W. 709; Gray v. City of Hannibal (Mo.), 29 S. W. (2d) 710.] It follows that a municipality is not required to keep its streets and sidewalks in such an absolutely safe and perfect condition as to preclude the possibility of accidents and insure the safety of travelers thereon under all circumstances, and is not liable "for every defect or obstruction, however slight or trivial, or little likely to cause injury, or for every mere inequality or irregularity" therein. [43 C. J., p. 1010, 13 R. C. L., sec. 289; 8 Thompson on Negligence (White's Supp.), sec. 6202; Lundahl v. Kansas City (Mo. App.), 209 S. W. 564; Maxwell v. Kansas City (Mo. App.), 52 S. W. (2d) 487; Ray v. City of Poplar Bluff (Mo. App.), 102 S. W. (2d) 814.] So in this case appellant contends that the alleged defect, the depression of the manhole cover with the sloping shoulder around the east side or edge of the manhole, was, as shown by the evidence most favorable to plaintiff, such a slight and trivial slope or interruption in the surface of the sidewalk that it could not

reasonably be anticipated that it would likely cause injury to travelers in the exercise of reasonable care, and that the trial court should therefore have declared, as a matter of law, that no actionable defect in the condition of the sidewalk was shown. Appellant relies principally on Maxwell v. Kansas City, supra, and that case is based largely upon what is said in Lundahl v. Kansas City, supra. We therefore first examine the Lundahl case and note certain observations appearing in the opinion of the Kansas City Court of Appeals therein. The plaintiff in that case "stumbled and fell on a granitoid sidewalk" in Kansas City. "The walk was laid in connected blocks about six feet square, and the obstruction, or defect therein, consisted in one block having sunk down (at the lowest place) between two or three inches below the next block with which it had been connected on a level." Defendant's motion for a directed verdict was overruled and that action of the trial court was assigned as error on appeal. The opinion comments on the "difficulty a court would have in saying, as a matter of law," that "an unnecessary obstruction such as described was not a negligent obstruction." The opinion then observes: "It is not practical, of course, to maintain a walk exactly level, or wholly free from obstruction . . ." and, an "obstruction may be . . . so slight . . . that it could be declared . . . not to be negligence, as a matter of law" but the obstruction "in the present case is along the border line, and we think it should be left to a jury." In the Maxwell case plaintiff's evidence was that she was caused to fall, on a sidewalk in Kansas City, by "tripping on an elevation in the sidewalk caused by one slab of the concrete sidewalk having been slightly raised above a connecting slab" by tree roots extending thereunder. At the highest point the elevation was one and one-half inches and where plaintiff "tripped" one and one-fourth inches. After reviewing some twelve Missouri decisions in sidewalk cases, relating to obstructions caused by an elevation or depression in some part of the sidewalk, the opinion of the Kansas City Court of Appeals says: "We have not found a case where the *elevation* extended so slightly above the surface and for so short a distance, and was the *only* defect relied upon, as the socalled defect in the case now before us. . . . If the offset in the surface of the street of two or three inches, in the Lundahl case is 'on the border line' between a defect to be left to the jury . . . and one to be declared nonactionable as a matter of law, then it would seem that one inch less than that, as in the case at bar, is on this, or the nonliable, side of that line. Under all the circumstances, we are unwilling to extend the liability of municipalities to a slighter defect than any heretofore declared. . . ." (Italics ours.)

The Lundahl and Maxwell cases have to do with slight eleva-

tions occurring in the surface of the sidewalk while the instant case involves an abrupt and semicircular slope or slanting of the surface of the sidewalk of one and one-half inches in eight inches (according to plaintiff's evidence) and presents a somewhat different situation. Whether an alleged defect constitutes negligence depends upon the facts of the particular case and ordinarily whether the condition complained of as defective, and as constituting negligence on the part of the city, is such that the sidewalk is not, because thereof, reasonably safe is a question of fact for the jury, but, as we have noted, if the evidence most favorable to plaintiff shows that the alleged defect was of such a slight and trivial nature that it could not reasonably be anticipated that such a slight defect or variation in the surface of the sidewalk would likely cause injury to travelers, in the exercise of proper care for their own safety, plaintiff does not make a submissible case. Recalling the evidence herein it will be remembered that this slanting or sloping shoulder, adjacent to and connecting with the east edge of the manhole, was in the approximate center of the east side of the sidewalk and opposite the entrance to the adjacent business house and that this sidewalk was in a business section and a much traveled way. There was some evidence, including the photographs in evidence, tending to show that while the manhole cover was noticeable and obvious for some distance the rounded, sloping shoulder and the abrupt slant of the surface of the sidewalk to the edge of the manhole cover was ''deceptive,'' that is, its presence in the sidewalk was not obvious until the traveler was at or very near thereto and would then take direct notice of it. This sloping shoulder was at a right angle with the line of travel. A view of the situation revealed by certain of the photographs put in evidence, the measurements on the part of plaintiff showing a sudden, abrupt and rounded downward slant or slope in the surface of the sidewalk of one and one-half inches in eight inches to the level manhole cover, and the other circumstances in evidence, considered we do not feel that we would be justified in holding, that, as a matter of law, such a condition is not actionable. We are inclined to think the evidence sufficient to warrant a conclusion on the part of a jury that it could and should have been reasonably anticipated that the condition shown, by the evidence most favorable to plaintiff, might likely create a hazard and cause injury to travelers on the sidewalk, and the maintenance of the sidewalk in such condition negligence, that is, that a submissible issue of fact was made. Cases cited by appellant holding that a gradual and uniform slope of a sidewalk for drainage or to conform the sidewalk to the topography of the ground, alone is not negligence are not in point under the facts of this case. It follows that the trial court was not in error in refusing defendant's request for a directed verdict.

■ Defendant city, as appellant, complains of the admission, over its objection, of the testimony of plaintiff's witness Nicholas Kahogiannos purporting to show prior and similar accidents had occurred, under the same conditions, at this manhole and the subsequent refusal of the trial court, upon its motion, to strike out the testimony and instruct the jury to disregard it. Kahogiannos testified that he was engaged in the restaurant business at 3521 Troost Avenue for two years next prior to August, 1933; that "the manhole was outside from my place;" and that "there was no change in that sidewalk around that manhole or in that manhole" during the two years he was in business there. We now continue the testimony in question and answer form (omitting defendant's objections and the adverse rulings of the court thereon):

"Q. Did you notice people walking back and forth there on that sidewalk during the time you were there in business at 3521 Troost? A. Yes. Q. Now, before July 12, 1933, (date plaintiff was injured) did you notice people walking along the sidewalk there and over and across this manhole? A. Yes, I noticed. Q. Did you see anything unusual happen there at that manhole before July 12, 1933? . . . A. Yes. Q. At the time you observed this unusual occurrence what kind of weather was it? A. It was clear. Q. What day was it? A. Well, July 4th, about 10 o'clock I was outside the window hanging the American flag. Q. What year? A. 1933. . . . Q. Sun shining? A. Yes. Q. Was there any water on the sidewalk? A. No, sidewalk was dry. Q. What happened at this manhole on July 4, 1933, when you were out in front that morning about 10 o'clock? A. *Well, I saw the old lady. She fell down on the manhole.* Q. On any other date did you see anything unusual happen there at that manhole? A. Before two weeks. Q. About two weeks before the Fourth of July? A. Yes. Q. You were outside the time two weeks before? A. Yes. Q. What was the condition of the pavement on that day, whether it was wet or dry? A. It was dry. Q. Well, what happened there that day? Did you see anything happen there at that manhole? A. *Well, I see the other lady got hurt on the same place.* .

MR. JAMES: (Attorney for plaintiff) That is all. (Italics ours.)

This appears to be a case coming within the exception to the general rule "which ordinarily excludes evidence of independent events and occurrences . . . not directly connected with the matter in dispute" (Lake Superior Loader Co. v. Huttig Lead & Zinc Co., 305 Mo. 130, 264 S. W. 396) so that it is competent in this kind of a case to show prior accidents occurring "under the same conditions at a given spot from the same cause" (Charlton v. St. Louis & San Francisco Railroad Co., 200 Mo. 413, 98 S. W. 529) as "circumstances *with other evidence*" tending to show the dangerous or unsafe con-

dition of the sidewalk on account of the alleged abrupt slope or slant therein, which plaintiff claims caused her to fall, and also as tending to show notice to or knowledge on the part of the city of the existence of the dangerous or unsafe condition in the sidewalk at that place. [District of Columbia v. Armes, 107 U. S. 519, 2 Sup. Ct. 840, 845, 27 L. Ed. 618. See, also, Boyd v. Logan Jones Dry Goods Co., 340 Mo. 110, 104 S. W. (2d) 348, 351, 352, and Asbury v. Fidelity Nat. Bank & Trust Co. (Mo. App.), 100 S. W. (2d) 946, 949.] The testimony of the witness Kahogiannos, supra, was all the evidence offered as purporting to show prior accidents "under the same conditions" and "from the same cause." His testimony was admitted and went to the jury on that theory. It is undisputed that the physical conditions were the same and unchanged on the date of plaintiff's injury, July 12, 1933, and the two dates to which his testimony relates, July 4, 1933, and a date about two weeks prior thereto, but, except in that respect, his testimony discloses no similarity in the occurrences. It does not appear what caused the lady to fall "down on the manhole" on July 4. The manhole cover was perfectly level, the west edge was level with the sidewalk. The defect alleged and relied upon by plaintiff was an abrupt slope or slanting of the surface of the sidewalk around and to the east edge of the manhole cover. It is not even shown that this lady was walking on the east side of the sidewalk. There was approximately five and one-half or six feet of the sidewalk west of the west edge of the manhole cover. It is not shown her fall was caused by stepping or slipping upon this sloping surface east of the manhole, which plaintiff says caused her fall. The cause of the fall which the lady sustained on July 4 is not stated. It is left, if known, unrevealed. Conceivably it might have resulted from any one of a number of causes, as for instance, the lady might have been walking along the west side of the sidewalk near the west edge of the level manhole cover and have stepped upon some slippery substance or object on the sidewalk which caused her to fall. The whole of the witness's testimony is: "Well, I saw the old lady. She fell down on the manhole." The other incident is even more indefinite and also lacking in anything tending to show similarity of cause with the alleged cause of plaintiff's fall. It is confined to: "Well, I see the other lady got hurt on the same place." Evidently by the expression "same place" the witness meant the same place at which the lady fell on July 4th. The witness did not see plaintiff fall and had no personal knowledge thereof. The testimony as to the two incidents fails in the requirements essential to make it competent under the exception to the general rule noted, supra, or relevant upon the theory and for the purposes for which it was purportedly offered and admitted, that is, it is wholly lacking in the essential of like,

or similarity of, cause. We think it readily apparent that this is a close case on the facts. Defendant city took the position that the slope complained of was so slight and so constructed as not to make the sidewalk unsafe for the use of persons traveling thereon in the exercise of proper care for their own safety. The jury were, over defendant's objections, permitted to consider the testimony of this witness as bearing on the issue of whether the slope was such as to make the sidewalk not reasonably safe. We think the testimony was calculated to be, and necessarily was, prejudicial to defendant and that the trial court erred in overruling defendant's objections thereto and its motions to strike out and instruct the jury to disregard same. Among the numerous grounds stated in defendant's objections and motions to strike out and withdraw the testimony from the jury were the following: that these other purported accidents were "not shown to have occurred under such circumstances as are sufficiently like or similar to those existing at the time of plaintiff's accident to make their admission of any probative value in this case;" that the evidence is "speculative and of no evidentiary bearing and of no probative value on the issues in this case . . . is highly prejudicial to defendant and its admission tends to confuse the issues in the minds of the jury."

Instruction A given on behalf of plaintiff covers the whole case and directs a verdict for plaintiff. The instruction first declares the duty of the municipality in respect to its public sidewalks and requires a finding that on the date of plaintiff's injury the sidewalk involved was "a public sidewalk" of defendant city "open to travel by the public," etc., then continues; "and, if you further believe and find that on said date there was a manhole in said sidewalk about opposite or adjacent to No. 3525 Troost Avenue, and if you further believe and find from the evidence that said sidewalk at and around said manhole was not in a reasonably safe condition for travel thereon by reason of being below the established grade and surface of sidewalk with an abrupt slope toward and into said manhole, and if you further find," etc. The instruction directs the jury to return a verdict for plaintiff if it finds that the "sidewalk at and around" the "manhole was not . . . reasonably safe . . . for travel thereon" because or for the "reason" the manhole cover was below the surface of the sidewalk "with an abrupt slope toward and into" the manhole without requiring first a finding of such facts by the jury. Thus, as appellant complains, the instruction assumes that there was an "abrupt slope" into the manhole in the sidewalk at this place. The petition alleged that the "sidewalk immediately around" the manhole was "in a defective and negligent condition and unsafe for the use of the public, in that the top of said manhole and the sidewalk immediately abutting upon said top were below

the established grade of the sidewalk with the sidewalk sloping abruptly toward and into said manhole.'' This was put in issue by the answer and whether there was an abrupt slope in the sidewalk was a controverted issue in the case throughout. Defendant claimed and its evidence tended to show that this slope was not nearly so pronounced as plaintiff's evidence tended to show and that it was so slight and gradual as not to constitute an appreciable variation in the normal slope of the sidewalk or make the sidewalk at the place unsafe for use by a traveler thereon in the exercise of proper care for his or her own safety. The word ''abrupt'' conveys the impression, or carries the implication, that the slope was very steep, sudden, sharp or precipitate and the instruction assumes that the slope was abrupt. It is error to give an instruction which assumes a material, controverted fact or issue in the case. The application of this rule is illustrated in the following cases: Barr v. Nafziger Baking Co., 328 Mo. 423, 433, 41 S. W. (2d) 559, 563, and cases there cited; Kamer v. M. K. & T. Railroad Co., 326 Mo. 792, 809, 32 S. W. (2d) 1075, 1084; Schimmelpfenning v. Wells (Mo.), 24 S. W. (2d) 154, 160; McCombs v. Ellsberry, 337 Mo. 491, 85 S. W. (2d) 135; Sheppard v. Travelers Protective Assn. of America (Mo. App.), 104 S. W. (2d) 784, 788; Counts v. Thomas (Mo. App.), 63 S. W. (2d) 416, 420; Hockley v. Hulet Bros. Storage Co. (Mo. App.), 16 S. W. (2d) 749, 753; Eudy v. Federal Lead Co. (Mo. App.), 220 S. W. 504, 505; Hengelsberg v. Cushing (Mo. App.), 51 S. W. (2d) 187, 188; Shepard v. Century Electric Co., 220 Mo. App. 1152, 1158, 299 S. W. 90, 92. Avoiding any assumption as to the nature or character of the slope the instruction should require a finding by the jury that there was such a slope in the sidewalk at that place as to make the sidewalk not reasonably safe.

Appellant further complains that plaintiff's Instruction C erroneously defines ''ordinary care.'' It is apparent, from the briefs, that appellant and respondent concur in what would be a correct, acceptable, and approved definition of the term and therefore this criticism can, and likely will be, met in drafting this instruction on another trial.

On account of the errors noted the judgment of the trial court is reversed and the cause remanded. *Hyde* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All the judges concur, except *Hays, J.,* absent.